IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIMBERLY K MORRISON,

       Plaintiff,                    No. 2:12-cv-1021 EFB

    vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

       Defendant.              ORDER
_____/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court denies plaintiff's motion and grants the Commissioner's motion.

I.    BACKGROUND

Plaintiff protectively filed an application for SSI benefits on October 29, 2007, alleging that she had been disabled since October 29, 2007. Administrative Record ("AR") 180-183. Plaintiff's application was initially denied on March 20, 2008, and upon reconsideration on August 29, 2008. *Id*. at 94-98, 102-106. On October 23, 2009, a hearing was held before administrative law judge ("ALJ") Michael McShane. *Id.* at 30-77. Plaintiff was represented by

1

counsel at the hearing, at which he, a medical expert, and a vocational expert ("VE") testified. *Id.*

On November 13, 2009, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the act.[1] *Id.* at 18-26. The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since October 29, 2007, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: anxiety disorder/post traumatic stress disorder (PTSD); depressive disorder NOS; personality disorder (borderline); and cannabis abuse (20 CFR 616.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert,* 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

\* \* \*

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: lift/carry up to 50 pounds occasionally and 25 pounds frequently; stand/walk 6 hours in an 8 hour workday; sit 6 hours in an 8 hour workday; no climbing ladders, ropes, or scaffolds, no work at unprotected heights or around dangerous, moving machinery. In addition, claimant is limited to simple procedures that are routine and repetitive, without frequent changes in duties. Claimant is further limited to occasional contact with the general public.

\* \* \*

5.  The claimant is has no past relevant work (20 CFR 416.965).

6.  The claimant was born on June 18, 1975 and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10.  The claimant has not been under a disability, as defined in the Social Security Act, since October 29, 2007, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 20-26.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 14, and on February 15, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-3.

3

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred by (1) improperly rejecting opinions from plaintiff's treating and examining sources, (2) failing to provide legally sufficient reasons for finding that plaintiff was not credible, and (3) relying on a hypothetical posed to the VE that did not adequately capture plaintiff's actual functional limitations. Pl.'s Mot. for Summ. J., ECF No. 16 at 16.[2]

/////

---

[2] The page numbers cited herein refer to those assigned by the court's electronic filing system and not those assigned by the parties.

4

A. <u>The ALJ Properly Weighed the Medical Opinion Evidence</u>

Plaintiff argues that the ALJ erred by rejecting opinions from treating and examining sources without providing clear and convincing reasons. *Id*. at 17.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

On March 4, 2008, plaintiff underwent a psychological evaluation, which was performed by Dr. Anita Kemp, Ph.D., an examining physician. AR 271-275. Dr. Kemp diagnosed plaintiff with panic disorder with agoraphobia and assessed plaintiff a GAF score of 55. *Id*. at 274. She found that plaintiff's prognosis for remission of symptoms was fair. *Id*. As for functional limitations, she opined that plaintiff was capable of performing simple and repetitive tasks, but

5

1 was moderately impaired in her ability to perform complex tasks due to her anxiety. *Id*. She
2 further opined that plaintiff was moderately impaired in her ability maintain regular attendance
3 in the work place; in her ability to interact appropriately with supervisors, coworkers, and the
4 public; in her ability to deal with changes in a routine work setting; and mildly impaired in her
5 ability to perform work activities in a safe manner. *Id*.

6 On March 18, 2008, state agency psychologist Adrianne Gallucci, Psy.D., completed a
7 mental residual functional capacity assessment. *Id*. at 276-293. She opined that plaintiff had
8 moderate limitations in the ability to carry out detailed instruction; to maintain concentration for
9 extended periods; and to maintain regular attendance, be punctual within customary tolerance,
10 and complete a normal workday or workweek without interruption. *Id*. at 276-277. It was also
11 her opinion that plaintiff had moderate impairments in her ability to interact with the public,
12 coworkers, and supervisors and in the ability to adapt appropriately to changes in a work setting.
13 *Id*. at 277. She concluded that plaintiff had good comprehension and memory; good
14 concentration, persistence and pace, with some difficulty in the ability to perform detailed tasks;
15 adequate social functioning with limited interaction; and adequate adaptive function. *Id*. at 278.
16 Dr. Gallucci's opinion was reviewed by J. Levinson, Ph.D., who affirmed her conclusions. *Id*. at
17 388.

18 The record also contains a work exemption determination for the California Department
19 of Social Services, dated May 5, 2008. *Id*. at 295. The determination provides that plaintiff was
20 exempt from the welfare to work requirement through February 29, 2009, "Per your doctor." *Id*.

21 On March 24, 2009, plaintiff was evaluated by Sara Wubben, Associate Social Worker,
22 at the County of Siskiyou Behavioral Health Services. *Id*. at 394-398. She found that plaintiff
23 was moderately depressed, anxious, negative and tearful, and had poor insight. *Id*. at 397.
24 /////
25 /////
26 /////

1  Plaintiff was assessed a GAF score of 45 and was diagnosed with bipolar disorder not otherwise
2  specified, rule out PTSD. *Id*. at 398.[3]

3       Plaintiff was subsequently seen by Dr. Mark Germine, her treating psychiatrist, on June
4  2, 2009. *Id*. at 440-445. Dr. Germine diagnosed plaintiff with schizoaffective disorder, OCD,
5  panic disorder with agoraphobia, and cannabis abuse. *Id*. at 445. He noted that plaintiff reported
6  feeling "a little off" and that her mood was off most of the time. *Id*. at 440. She reported having
7  panic attacks that include chest pain and shortness of breath, which "sometimes occur when [she
8  is] around people." *Id*.

9       The ALJ also solicited an expert opinion from Dr. Fair, Ph.D., who testified at plaintiff's
10 hearing. *Id*. at 64-78. Dr. Fair found that plaintiff suffers from an anxiety disorder, an affective
11 disorder, and possible borderline personality disorder. *Id*. at 68-70. She noted that plaintiff's
12 testimony "might be somewhat symptomatic of OCD, but . . .[found that] obsessive compulsive
13 disorder has not been fully developed in this file." *Id*. at 66. While she acknowledged that
14 treating sources have diagnosed plaintiff with OSC, she further noted that plaintiff has received
15 "so many different diagnoses . . . ." *Id*. at 68.

16      Based on her review of the evidence, Dr. Fair opined that plaintiff has mild to moderate
17 impairments in social functioning, and moderate impairments in concentration, persistence, and
18 pace. *Id*. at 70-73. She stated that "if plaintiff has a hard time leaving her house," she would
19 require a job with flexibility in terms of where and when she works. *Id*. at 74. However, she
20 opined that plaintiff's panic disorder with agoraphobia would not prevent her from leaving her
21 house if she took proper medication. *Id*. at 74. She further opined that plaintiff should not
22 perform complex and detailed tasks and should have limited contact with the public. *Id*. at 74.

23      The ALJ specifically found that the record does not contain an opinion from a treating
24 physician indicating that plaintiff is disabled. AR 24. Nonetheless, plaintiff argues that the ALJ

---

[3] This assessment was also signed by Watlia Dubonnet, MFT, on April 1, 2009.

7

should have credited the opinion of Dr. Germine, her treating physician, and other treating mental health specialists at Siskiyou Behavioral.  Plaintiff also contends the ALJ failed to credit opinions from Sara Wubben, ASW, and Watlia Dubonnet, MFT, who "opined that Plaintiff was not able to work and that she had limitations that affected her ability to participate in education or training as well as having a medically verifiable condition that limited or prevented her from performing certain tasks, and that this was a chronic condition." ECF No. 16 at 24.  Plaintiff cites to Exhibit 10F in support of this argument. *Id.*

Plaintiff's argument seems to be that the ALJ erred by rejecting opinions from Dr. Germine, Sara Wubben, and Watilia Dubonnet, and Dr. Germine without explanation.[4]  *See* ECF No. 21-24.  There are multiple problems with the argument.  As for Dr. Germine, the court's independent review of the record fails to yield an opinion by Dr. Germine assessing plaintiff's functional limitations.  Unsurprisingly, plaintiff fails to identify any opinion from Dr. Germine that assesses plaintiff's limitations caused by her mental impairments.

As for Sara Wubben and Watilia Dubonnet, plaintiff concedes that neither are acceptable medical sources.[5]  ECF No. 16 at 17; *see* 20 C.F.R. § 416.913(a).  Since neither can be considered a treating physician, the ALJ was not required to provide clear and convincing reasons to reject their opinions.  Also, plaintiff's contention that Dr. Sara Wubben and Watlia Dubonnet provided an opinion that plaintiff is unable to work and that her limitations preclude her from participating in certain activities is not supported by her citation to Exhibit 10F.  The

---

[4] Plaintiff's arguments lack organization and are difficult to follow.  The first argument heading contends that the ALJ erred by rejecting the opinions from treating and examining sources.  The body of the argument, however, is devoid of any allegation that the ALJ erred in rejecting an examining physician's opinion.

[5] Plaintiff also contends that on August 19, 2009, Sara Wubben and Witalia Dubonnet provided an opinion that plaintiff is unable to work.  Plaintiff further cites to chart notes from Dr. Germine from August 17, 2009.  Plaintiff contends that these documents are contained in exhibit 10F.  The court has thoroughly reviewed the record and is unable to find the documents referenced by plaintiff.  As these documents are not part of the record, the ALJ cannot be faulted for not considering them.

court has searched the records and is unable to find any evidence supporting the alleged opinion. In defendant's opposition, counsel represented that she also completed a thorough review of the record, with the same result. ECF No. 21-1 at 18. Although plaintiff had the opportunity to file a reply brief addressing the contention that the record contains no such opinion, no reply was filed.[6]

The medical evidence shows that plaintiff's treating physicians only provided a summary of plaintiff's reported symptoms and a diagnosis based on her reports. *See, e.g.,* AR 392-398, 440-444. Nowhere in the treatment records is there an opinion addressing what limitations in mental functioning plaintiff experiences as a result of her symptoms. Accordingly, there was no treating opinion to consider and therefore no error.

Plaintiff also argues that the May 17, 2008 welfare to work exception determination contained an opinion from a treating physician that was improperly rejected by the ALJ. ECF No. 16 at 24. That document simply states, "Per your doctor, you are medically exempt till 2/29/09 when this exemption ends." AR 295. It is far from clear how this could be considered competent evidence from a treating source. The decision does not identify the physician that recommended the exception from the welfare to work requirement, nor does it explain the basis for such a recommendation. To the extent that it can be construed as an opinion, it amounts to little more than a conclusory statement that plaintiff is temporarily disabled. For an impairment to be disabling, it must last longer than 12 months. 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a

---

[6] Plaintiff's counsel's failure to correct or withdraw the representation is troubling. To the extent that there is evidence containing a relevant opinion, plaintiff's counsel should have addressed it and properly cited to it. If the representation was factually inaccurate, as it certainly appears to have been, counsel has a duty to correct it. At the very least, counsel should have done so in a reply to defendant's representation that no such evidence exists in the record. Assuming plaintiff's counsel's representation was a mistake and not an attempt to mislead, upon learning of his mistake counsel should have promptly corrected it with an explanation that the representation was based on a mistaken belief that such an opinion was in the record rather than allowing the misrepresentation to remain in place. Judicial resources have been wasted combing the administrative record for an opinion that does not appear to exist.

continuous period of at least 12 months. We call this the duration requirement."). This determination is dated May 17, 2008, and the exception ends less than a year later on February 29, 2009. Accordingly, the "opinion" fails to establish that the undisclosed impairment resulting in the exception persisted for more than 12 months.

Further, even without the temporary nature of the statement, this opinion regards the ultimate issue of disability and therefore is not binding on the ALJ. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."); *see also* 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Thus, the ALJ did not err in failing to credit this opinion.

Plaintiff also presents several unrelated arguments under a prolix, six line heading purportedly addressing opinion evidence. ECF No. 16 at p.17. Each of these arguments attack various findings made by the ALJ in assessing plaintiff's RFC. Plaintiff first takes issue with the ALJ's finding that plaintiff's ability to go grocery shopping indicates some ability to be around others. ECF No. 16 at 18; *see* AR 21 (ALJ stating that plaintiff "is able to go grocery shopping (inferring an ability to be around others)"). Plaintiff argues "there is no evidence in the record that Plaintiff is capable of persisting in grocery shopping activity to a frequency and extent implying an ability to be "around others" relevant to a capacity for work activity." ECF No. 16 at 18. The precise point of the argument is unclear. Assuming that plaintiff challenges the finding that plaintiff is truly capable of grocery shopping, plaintiff testified to that fact. AR 55. Plaintiff's testimony is substantial evidence to support the ALJ's finding in that regard. If the argument is that the ability to grocery shop does not evidence some ability to interact with others, the argument ignores the extent to which grocery shopping involves being around other people--including other customers and store employees and inevitable interaction with at least

10

these other individuals to complete the task of shopping. The ALJ's finding that plaintiff's ability to grocery shop shows some ability to be around others is a logical inference which the ALJ was permitted to make. *Marci v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence.") (quotations omitted).

Furthermore, the ALJ did not find or even suggest that plaintiff could work in an environment that has constant or frequent interaction with others. The ALJ's RFC determination limits plaintiff to performing unskilled work, which "ordinarily involves working with objects, rather than data or people." *See* SSR 85-15 (unskilled jobs at all exertional levels "ordinarily involve dealing primarily with objects, rather than with data or people."). Accordingly, the ALJ properly took into account plaintiff's ability to go shopping in assessing her overall RFC.

Plaintiff also attacks the ALJ's finding that plaintiff's agoraphobia "should not be an issue with correct treatment and medication." AR 23. Plaintiff contends that there is no evidence supporting the ALJ's finding that "[w]hen Plaintiff was taking an anti-bipolar disorder and anti-depressant medication in April, May, and June of 2008, her mood had improved and her irritability decreased  (Ex. 8F/12-13)." ECF No. 16 at 19; *see* AR 23. Plaintiff observes that the evidenced cited by the ALJ contains medical records from 2009, not 2008. Other than pointing out what appears to be a mistaken reference by the ALJ to the wrong year, the argument does nothing to undermine the pertinent finding of the ALJ. A simple review of plaintiff's medical records from 2008 shows that the ALJ's finding are supported by medical evidence. *See* AR 326 (treatment note dated June 18, 2008, stating that plaintiff is taking Abilify and her anxiety symptoms are "much better."), 328 (treatment note dated June 3, 2008, stating that plaintiff's mood disorder has improved, anxiety is better, no racing thoughts, and plaintiff is "now doing better."), 342 (treatment note dated April 29, 2009, stating that plaintiff reported "that the Abilify was helpful and slowing of her racing thoughts and deceasing her irritability.").[7]

---

[7] In light of counsel's own difficulties in citing to the record, the argument is curious.

11

In the same vein, plaintiff also appears to argue that the ALJ erred in failing to account for Dr. Faire's finding that her agoraphobia would require employment with flexibility, including being able to take breaks or go home. ECF No. 16 at 26. The argument is premised on a misreading of Dr. Faire's opinion. Addressing the diagnosis for agoraphobia, the Dr. Faire stated that "if [plaintiff] has a hard time leaving her house, then it will, might [sic] require a job where there was some flexibility in terms of perhaps where she worked or when she worked, that sort of thing." AR 73-74. However, Dr. Faire found that plaintiff would be able to leave her house if she was taking proper medication. *Id*. at 74. The ALJ explicitly adopted this opinion. *Id*. at 23 ("The medical expert testified that claimant's issues with agoraphobia should not be an issue with correct treatment and medication, which is consistent with the objective findings. When claimant was taking an anti-bipolar disorder and anti-depressant medication in April, May, and June of 2008, her mood had improved and her irritability decreased."). Accordingly, the ALJ properly adopted Dr. Faire's medical opinion.

Plaintiff also takes issue with the ALJ's assessment of the multiple GAF scores contained in the record. In his decision, the ALJ stated, "Claimant has a history of suicidal gestures and polysubstance abuse with low Global Assessment of Functioning (GAF) scores. (Ex. 8F/50, 23-28). The ALJ noted that Dr. Faire testified that plaintiff "was abusing alcohol and drugs at the time" of her low scores. AR 22. On February 26, 2007, plaintiff was assessed a GAF score of 40. AR 421. The same treatment note reported cannabis abuse. *Id*. There is also a record of a GAF score of 35 from 1993, but alcohol abuse was also indicated. *Id*. at 436. Plaintiff also testified at her hearing that she has used marijuana regularly since she was 14 and that she had quit only three month before the October 23, 2009 hearing. *Id*. at 50-53.

Plaintiff contends, however, that the most relevant GAF scores were from June 2, 2009 (GAF of 39), March 24, 2009 (GAF of 45), June 14, 2007 (GAF of 45), and March 7, 2007 (GAF of 50). ECF No. 16 at 18. Even if true, plaintiff admitted that she was using marijuana regularly at the time these GAF scores were provided and had been doing so since she was 14

years old. AR 51. She further testified that she stopped using marijuana just three months prior to the hearing. *Id*. at 51-53. Thus, plaintiff was regularly using drugs at the time she was assessed the "relevant" scores.

Plaintiff appears to argue that the ALJ could not properly rely on her use of marijuana because it was prescribed to her. ECF No. 16 at 19. Plaintiff misunderstands the ALJ's finding. At her hearing, plaintiff testified that she was prescribed marijuana in April 2008. Thus, at the time she received her March and June 2007 GAF scores, she was using marijuana without a prescription. As for the June and March 2009 GAF scores, the ALJ did not reject these scores on the basis of drug use. Rather, the ALJ specifically found that at the time these scores were assessed, plaintiff was not taking her prescribed medication. AR 23. This finding is supported by the record. A June 2009 treatment note from Dr. Germine shows that plaintiff stopped taking Lexapro the previous year, and she had refused to take Cymbalta. *Id*. at 440. Plaintiff argues that this only shows that she stopped taking one medication, and that the same treatment note shows that she continued to take Abilify since "since July of last year." ECF No. 16 at 19. Plaintiff's own reports indicate that she was prescribed Abilify because it "helps the Lexapro" AR 250. Plaintiff, however stopped taking her Lexapro. While she may have been taking one of her prescriptions, the record supports a finding that she was not taking her medication as directed by her treating physician. Accordingly, the ALJ's finding that plaintiff was either abusing drugs or alcohol or not complying with her medication regiment is supported by the record.

Furthermore, the ALJ was not even required to explain the weight he gave to the various GAF scores in the record. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas. v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). "The scale does not evaluate impairments caused by psychological or environmental factors." *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). Since the scores are intended for use in planning treatment, they are not dispositive in social security case, *Vance v. Astrue*, No. CV 07-4418-SS, 2008 WL

2955140 *5 (C.D. Cal. July 30, 2008), and "an ALJ is not required to give controlling weight to a treating physician's GAF score," *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009). Accordingly, there was no error in evaluating plaintiff's GAF scores.

Based the forgoing, the ALJ did not err in assessing the medical evidence of record.

B. <u>The ALJ provided clear and convincing reasons for rejecting plaintiff's testimony</u>

Plaintiff contends that the ALJ rejected her testimony without providing clear and convincing reasons. ECF No. 16 at 24-26. In evaluating whether testimony and subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345–47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity and effect of symptoms, and inconsistencies between the testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

1    Plaintiff contends that the ALJ erred in rejecting her testimony based solely on his
2 finding that plaintiff's "symptoms are not consistent with medical records, signs, and laboratory
3 findings, or the record as a whole." Plaintiff argues that an ALJ's adverse credibility
4 determination cannot be based solely on a lack of medical support as to the severity of the
5 symptoms. ECF No. 16 at 25. While an ALJ may consider the inconsistency between objective
6 findings and subjective claims, it may not be the sole reason for rejecting a plaintiff's subjective
7 complaints. *Light v. Soc. Sec. Admin.*, 99 F.3d 289, 792 (9th Cir. 1997). Here, however, the
8 ALJ provided numerous other reasons for discrediting plaintiff's subjective complaints, none of
9 which plaintiff addresses.

10   The ALJ first noted that plaintiff's subjective complaints are inconsistent with her
11 reported daily activities. AR 24. He observed that plaintiff was able to help her children with
12 their homework, get them from school, drive them to school, and attend their school related
13 activities; she did most of the cooking, had no trouble with personal care, went shopping twice a
14 month, did the laundry, and was able to drive. *Id.* An ALJ may consider activities of daily
15 living in assessing a plaintiff's credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).
16 "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to
17 the workplace, the ALJ may discredit the claimant's allegations upon making a specific findings
18 related to those activities." *Id.* The ALJ properly observed that the plaintiff engaged in
19 numerous activities manifesting functional capabilities consistent with those required in the
20 workplace and with RFC determined by the ALJ.[8] He therefore properly discounted the severity
21 of plaintiff's subjective complaints in assessing her overall credibility as to her ability to work.

22   The ALJ also discredited plaintiff's subjective complaints because she "had not always
23 been compliant with her treatment." An ALJ is permitted to consider an unexplained or

---

[8] The ALJ cited to descriptions of the plaintiff's daily activities that were provided by her mother (AR at 201, 204) and the plaintiff (AR 209, 212). AR at 24. There is substantial evidence to support the ALJ's finding regarding those activities.

15

inadequate explanation for failing to follow a prescribed course of treatment. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). As discussed above, there is ample evidence supporting the ALJ's finding that plaintiff was not compliant in taking her prescribed medication.

The ALJ also noted inconsistencies in the record. He observed that plaintiff testified that she had not consumed alcohol since 1992, but the record indicated that she had been diagnosed with alcohol abuse in 1993. AR 24. The inconsistent statement is a legitimate consideration in assessing plaintiff credibility. *See Smolen*, 80 F.3d at 1284.

As addressed above, the ALJ provided numerous reasons for discrediting plaintiff's subjective complaints and collectively they constitute a clear and convincing basis for doing so. Accordingly, the ALJ did not err in assessing plaintiff's credibility.

    C.    <u>The ALJ Did Not Err</u>

Plaintiff also contends that the ALJ erred by failing to credit the VE's testimony in response to a hypothetical that accurately reflected plaintiff's functional limitations. This argument is based on plaintiff's contention that the ALJ erred in assessing the medical opinions of record and rejecting plaintiff's subjective complaints. As explained above, the ALJ did not err in assessing this evidence. Accordingly, the ALJ was not require to credit the VE's response to a hypothetical that included such limitations.

V. <u>CONCLUSION</u>

For the reasons stated above, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 30, 2013.

    EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE

16